UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ARMSTRONG PUMPS, INC.,

                Plaintiff,

                                          **DECISION AND ORDER**
       v.                                                 08-CV-911A

THE BREWER-GARRETT COMPANY,

                Defendant.

## INTRODUCTION

On March 6, 2009, defendant filed a motion to dismiss plaintiff's complaint or, alternatively, to transfer this case to the United States District Court for the Northern District of Ohio. Defendant asserts that the transaction in question occurred entirely within Ohio among parties based entirely in Ohio, and that there is no reason to bring the case in New York. Plaintiff counters that the parties entered a valid forum selection agreement designating this District as the exclusive federal forum for any litigation arising from the purchase, an assertion that defendant denies. The Court held oral argument on January 20, 2010. For the reasons below, the Court will grant defendant's motion and dismiss the case for lack of personal jurisdiction.

## BACKGROUND

This case concerns the purchase and installation of a control system for a heating, ventilation, and air conditioning ("HVAC") system at the Erieview Towers in Cleveland, Ohio. Plaintiff manufactures fluid flow devices for HVAC systems. Plaintiff is a multinational company that, *inter alia*, has an office in North Tonawanda, New York and an agent called Northrich Company in Garfield Heights, Ohio. Defendant is an HVAC contractor organized under Ohio law with a principal place of business in Middleburg Heights, Ohio.

In October 2007, after taking on a project to perform HVAC work at Erieview Towers, defendant agreed to engage plaintiff as a subcontractor through the Northrich Company. Through Purchase Order number 49888 dated October 24, 2007, defendant sent Northrich a purchase order in the amount of $80,000 to acquire an IPC-11550 control system. This purchase order was signed by Dave A. Zebrowski, a senior project manager for defendant. The purchase order contains no language regarding indemnification, governing law, jurisdiction, venue, or acceptance.

In response to defendant's purchase order, plaintiff shipped the control system. For several months in 2008, the parties appear to have disputed how functional plaintiff's control system was. Without delving into details that are in dispute and not relevant to the resolution of the pending motion, the Court will note briefly that defendant considered plaintiff's control system defective.

Defendant claims to have removed plaintiff's control system and replaced it, though defendant admitted at oral argument that it never returned it to plaintiff. The dispute over the quality of the control system and defendant's obligation to pay for it ultimately led to the commencement of this litigation.

The details that are relevant to resolving the pending motion concern exactly what plaintiff did in response to defendant's purchase order. *Exhibits B and C* to plaintiff's opposition papers (Dkt. No. 14 at 8, 10-13) consist of two documents, one titled an "Order Acknowledgment" and one titled "Terms of Sale and Warranty." The Order Acknowledgment has plaintiff's letterhead at the top and does not mention Northrich. The Order Acknowledgment also is undated and unsigned, with no indication as to whether it was sent or received. The Order Acknowledgment suggests that plaintiff's shipment of the control system began no later than March 19, 2008 and concluded no later than March 28, 2008. The Terms of Sale and Warranty are unsigned, undated, and also unaddressed, and again have no indication as to whether they were sent or received. Although plaintiff has submitted evidence that sending these two documents in response to purchase orders is a "standard practice," there is no evidence in the docket indicating when this standard practice occurs for any given purchase order or whether anyone working for plaintiff specifically recalls sending these two documents to defendant. Paragraph 1 of the Terms of Sale and Warranty states that "[t]he the following terms shall prevail over and cancel any other or different

3

terms or conditions proposed by a customer of [plaintiff] through a purchase order or otherwise." Paragraph 19 states that New York law will govern defendant's purchase and that this District will have exclusive jurisdiction and will be the exclusive venue for any federal litigation arising from the purchase. Paragraph 21 states that defendant's "acceptance of any goods supplied by [plaintiff] or on [plaintiff's] behalf shall without limitation constitute acceptance of all terms and conditions as stated herein." Critically, plaintiff rests its opposition to defendant's motion entirely on these two documents. Plaintiff has chosen not to contest that all relevant events in this case occurred in Ohio, or that defendant never established minimum contacts with New York within the meaning of N.Y. CPLR 302.

This case commenced when plaintiff filed its complaint on December 12, 2008. In the complaint, plaintiff set forth one claim for breach of contract and one claim for unjust enrichment. The complaint makes no mention of the Order Acknowledgment, Terms of Sale and Warranty, or any other contractual agreements regarding jurisdiction and venue. In fact, Paragraph 3 of the complaint states only that the Court has subject matter jurisdiction under the diversity statute, 28 U.S.C. § 1332. Defendant filed its initial motion papers on March 6, 2009, and made no mention in those papers of the Order Acknowledgment or Terms of Sale and Warranty. Plaintiff introduced those two documents to this case for the first time in its opposition papers, filed on July 24,

4

2009. Defendant's reply of August 6, 2009 represents the first time that defendant addressed these two documents. As part of its reply in support of its motion, defendant insists that it saw the Order Acknowledgment and Terms of Sale and Warranty for the first time in plaintiff's opposition papers. Although plaintiff rests its opposition on these two documents, defendant argues that it could not have consented to these documents if it never saw them before. In the absence of a forum selection clause, defendant argues, this Court cannot have personal jurisdiction over it—or must at least change venue—because the entire transaction began and ended in Ohio and because all witnesses and relevant evidence are in Ohio.

## DISCUSSION

### *Personal Jurisdiction Generally*

"In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion. If the court chooses not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials. Eventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. But until such a hearing is held, a prima facie showing suffices,

notwithstanding any controverting presentation by the moving party, to defeat the motion." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) (citations omitted). An evidentiary hearing will not be necessary here because the Court has sufficient information about the forum selection clause and because, through its opposition papers and oral argument, plaintiff neither opposed nor even commented on defendant's assertions that this case otherwise has no connection to the state of New York. Consequently, Plaintiff will be able to establish personal jurisdiction if and only if it can establish the validity of the forum selection clause in the Terms of Sale and Warranty.

### *Contract Formation*

An assessment of basic principles of contract law will put the forum selection clause in proper context. "Under New York law a contract is formed once four elements are in place: (1) offer; (2) acceptance; (3) mutual assent; and (4) an intent to be bound." *Vanlab Corp. v. Blossum Valley Foods Corp.*, No. 04-CV-6183, 2005 WL 43772, at *2 (W.D.N.Y. Jan. 10, 2005) (Telesca, *J.*) (citation omitted). New York's Uniform Commercial Code applies to the particular transaction at issue in this case because it concerned a present or future sale of goods. *See* N.Y. U.C.C. § 2-105(1) (defining "goods"); *id.* § 2-106(1) (defining "contract"). Defendant's purchase order, with its instruction to "[P]lease ship the following merchandise subject to conditions below," invited to plaintiff to enter into and to complete an exchange of a control system for a sum of $80,000. *See id.*

6

§ 2-206(1)(b) ("[A]n order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or non-conforming goods . . . ."). By shipping the control system in response to the purchase order, plaintiff fulfilled the last three elements of contract formation and completed the transaction that defendant proposed. *Cf. Avila Group, Inc. v. Norma J. of Cal.*, 426 F. Supp. 537, 542–43 (S.D.N.Y. 1977) ("It is not contested that [plaintiff] shipped the first portion of the orders to [defendant] and thus began to render its performance under the contract. This action itself would be sufficient to constitute an acceptance of [defendant]'s offer under the applicable provisions of the Uniform Commercial Code."). The Order Acknowledgment indicates that plaintiff's completion of defendant's proposed transaction began as early as March 19, 2008 and concluded no later than March 28, 2008. The contract between defendant and plaintiff thus ended no later than March 28, 2008. Because the comment in the Order Acknowledgment referring to Blaine Lightfoot means that the document could not have been printed, let alone mailed, earlier than March 27, 2008, the Court will make a reasonable inference that the Order Acknowledgment was generated on March 28, 2008 or later, after the contract between defendant and plaintiff concluded. The forum selection clause in question, therefore, will have to be assessed as a proposed modification to a previously existing and completed contract.

*Modification*

"[A]dditional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless . . . they materially alter it . . . ." N.Y. U.C.C. § 2-207(2)(b). Forum selection clauses proposed as additions or modifications to pre-existing contracts are material alterations and are unenforceable without explicit consent from all parties to be bound. *See Statewide Aquastore, Inc. v. Pelseal Techs., LLC*, No. 5:06-CV-93, 2008 WL 1902207, at *4 (N.D.N.Y. Apr. 28, 2008) ("[B]ecause the forum selection clause would materially alter the parties' agreement and Plaintiff never explicitly agreed to the inclusion of that clause, the Court finds that the forum selection clause contained in Defendant's P.O. Acknowledgment is unenforceable under § 2-207(2)(b)."); *Vanlab*, 2005 WL at *3 ("[T]he addition of a forum selection clause is considered a material alteration and therefore cannot be unilaterally incorporated into a contract without the consent of the parties.") (citing *One Step Up, Ltd. v. Kmart Corp.*, No. 97 CIV. 1469, 1997 WL 391117, at *2 (S.D.N.Y. July 11, 1997)); *Lorbrook Corp. v. G & T Indus., Inc.*, 562 N.Y.S.2d 978, 980 (App. Div. 1990) ("[T]he additional term fixing Michigan as the forum state for litigation never became part of the contract, because it materially altered the prior agreement and plaintiff never expressly assented to it.") (citations omitted); *cf. Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 782 (2d Cir. 2003) (endorsing *Lorbrook*); *TSR Silicon Res., Inc. v. Broadway Com Corp.*, No. 06 Civ.

9419, 2007 WL 4457770, at *4 (S.D.N.Y. Dec. 14, 2007) (finding that a forum selection clause, though a material alteration, was enforceable against the party to be bound only because that party received at least 75 invoices containing that clause over a five-year period).

Here, despite the favorable inferences owed to plaintiff on this motion to dismiss, there is no way to declare that defendant explicitly agreed to the forum selection clause. No language of explicit agreement appears anywhere in the Order Acknowledgment or Terms of Sale and Warranty. No signatures or dates appear in those documents. No one at plaintiff has a specific recollection of sending these two documents to defendant and hearing any explicit consent back. No one at plaintiff has a specific recollection of when its "standard practice" would have been invoked. Additionally, the Court finds the absence of any mention of these documents until recently to be noteworthy. The Court will give plaintiff the benefit of the doubt regarding the existence of a "standard practice." If plaintiff had invoked its standard practice here, however, and if defendant had agreed explicitly to the forum selection clause, then surely plaintiff would have mentioned the forum selection clause in its complaint and defendant would have attacked it immediately in its initial motion papers. The Court cannot accept that both parties would have ignored a valid forum selection clause until their response and reply to the pending motion. Under these circumstances, the Court holds that the forum selection clause submitted by plaintiff is unenforceable. The

absence of a valid form selection clause leaves plaintiff unable to make a *prima facie* showing of personal jurisdiction.

## CONCLUSION

For all of the foregoing reasons, the Court hereby grants defendant's motion and dismisses plaintiff's complaint in its entirety. The Clerk of the Court is directed to close this case.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: February 2, 2010